IN THE COURT OF CRIMINAL APPEALS
OF TEXAS




NOS. AP-75,930 & AP-75,931




EX PARTE HELIBERTO CHI, Applicant




ON APPLICATION FOR A WRIT OF HABEAS CORPUS
AND PETITION FOR WRIT OF PROHIBITION
IN CAUSE NO. 0805594A FROM THE
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY



            Price, J., filed a dissenting opinion.


DISSENTING OPINION

           Eight months ago, the momentum of the death machine in Texas propelled us to an
unseemly execution. On the same day that the United States Supreme Court agreed to
examine the constitutionality of the Kentucky protocol for lethal injection,


 Michael Richard
died on the gurney before the mechanism could grind to a halt. The Supreme Court has since
spoken, and a plurality has provided us with a standard for measuring the constitutionality
of our own execution protocol.


 The question for our consideration is whether our own
lethal-injection protocol, particularly the protocol for assuring that the first anesthetic drug
is properly administered, is “substantially similar” to that in Kentucky which the plurality
upheld.


 Today, a plurality of this Court dismisses two habeas corpus applications raising
such a claim,


 holding that the claim is not cognizable under Article 11.071of the Texas Code
of Criminal Procedure, our capital habeas corpus statute.


 In my view, the claim falls
comfortably within the ambit of the statute. Nevertheless, the Court insists on withholding
the rudiments of due process and due course of law in its equally unseemly haste to crank the
machine back up. I cannot go along with this.
COGNIZABILITY UNDER ARTICLE 11.071
           I have argued in the past that a challenge to our lethal-injection protocol ought to be
entertained in a subsequent application for writ of habeas corpus under Section 5 of Article
11.071.


 I have also dissented to the Court’s unwillingness in the past even to consider
“whether a challenge to the lethal-injection protocol actually constitutes a post-conviction
application for writ of habeas corpus at all, under Article 11.071, since it may not constitute
a challenge to ‘a judgment imposing a penalty of death.’”


 Today the Court finally reaches
the question of cognizability of such a claim and concludes that it is not cognizable. I
disagree.
           “The writ of habeas corpus is a procedural device for subjecting executive, judicial,
or private restraints on liberty to judicial scrutiny.”


 Even a death-row inmate retains certain
residual—albeit necessarily limited, but nevertheless constitutionally protected—liberty
interests.


 Among those is the interest in not having the executive branch of government, in
the form of the Texas Department of Criminal Justice, Correctional Institutions Division,
which is tasked with carrying out his lawful execution, do so in a manner that would
constitute “cruel and unusual punishment[ ]” as prohibited by the Eighth Amendment to the
United States Constitution,


 or “cruel or unusual punishment” as prohibited by Article I, §
13 of the Texas Constitution.


 Surely we would not sit idly by and allow the applicant to be
drawn and quartered, if that were the method that the Director of TDCJ-CID [the Director]
chose to carry out his execution, since such a method would unquestionably constitute cruel
and unusual punishment.


 Yet today the Court declares that we are powerless to invoke our
habeas corpus authority to halt such an unconstitutional implementation of an otherwise
lawful warrant of execution because the method of execution, unconstitutional though it may
be, does not effect the “fact or the length of confinement.”


 I find this holding intolerable.



           A death-row inmate does not serve a specific length of sentence; he is confined until
he is either executed, commuted, or exonerated. It makes little sense in this context to
analyze habeas corpus cognizability in terms of the “fact or length” of confinement. The
convicted capital murderer who has been legitimately sentenced to death has no liberty
interest in the sense that he can ever expect to be free from confinement, so long as he lives. 
Indeed, he does not even retain a “life” interest that is sufficient to overcome the State’s
legitimate interest in extinguishing it, consonant with due process. The one substantive
constitutional right he unquestionably retains, however, is the right, when the time comes,
to be executed in a humane manner. I cannot accept that the Great Writ should not be an
available remedy for the applicant to raise an Eighth Amendment challenge to the manner
of his execution on the ground that it does not impact the “fact or length” of his confinement,
which is incidental, but only the manner of his execution.
           Article 11.071 of the Code of Criminal Procedure “establishes the procedures for an
application for a writ of habeas corpus in which the applicant seeks relief from a judgment
imposing a penalty of death.”


 If the Director’s purported authority for subjecting a death-row inmate to a lingering and torturous death is the warrant of execution, which in turn is
authorized by the mandate of this Court following affirmance of a trial court’s judgment
imposing the death penalty, then any “relief” the inmate seeks on account of the obvious
Eighth Amendment violation would be relief from that judgment. It may not constitute
absolute relief in the sense that it would absolve the inmate from imposition of the ultimate
penalty of death. But it would constitute relief from the unlawful implementation of an
otherwise lawful penalty and release the inmate from the incremental encroachment upon his
liberty interest in not being put to death in an inhumane manner. A valid judgment and
sentence of death authorizes an execution, but it does not (and could not under any
circumstances) authorize a cruel and unusual execution.


 For this reason I would hold that
the applicant’s claim is cognizable under Article 11.071.
           For the proposition that to be cognizable a post-conviction habeas claim must
challenge the “fact or the length or confinement,”


 the plurality cites Ex parte Lockett.


 
Lockett, in turn, cites only a habeas corpus practice manual.


 The manual cites nothing at
all for this proposition. It does go on to say: “The Court of Criminal Appeals has held that
without some form of confinement, you can’t invoke Art. 11.07.”


 And it is true that in
1987, in Ex parte Renier,


 the Court held that some form of “confinement” was a necessary
prerequisite to obtaining relief under Article 11.07.


 However, as the practice manual also
points out, the Legislature amended Article 11.07 in 1995. In that amendment the
Legislature explicitly defined “confinement” to mean “confinement for any offense or any
collateral consequence resulting from the conviction that is the basis of the instant habeas
corpus.”


 It is doubtful, therefore, that literal confinement is even a prerequisite to post-conviction habeas relief under Article 11.07 anymore, much less a showing that a claim
effects the “fact or length” of confinement. And in any event, the Court made it clear in
Renier that, but for another available post-conviction habeas forum to challenge a “restraint”
less than confinement, the legislative limitation on post-conviction habeas corpus that was
then found to be embodied in Article 11.07 would have constituted an unconstitutional
suspension of the writ.


 For these reasons, the Court today would do well to abjure any
literal application of the “fact and length of confinement” language of Lockett to reject
habeas cognizability to a claim that challenges a restraint upon a liberty interest, but has
nothing to do with literal “confinement.”
           There are other cases in which the Court has held that a purported habeas corpus
application that does not challenge “confinement” does not state a cognizable claim. The
plurality cites one


—Ex parte Kerr.


 In Kerr, the purported writ did not challenge the
conviction or death sentence of the applicant, but instead raised claims about the
constitutionality of the procedures prescribed by Article 11.071 itself. Had we agreed with
all of Kerr’s arguments, we still would have had no basis to grant him habeas corpus relief,
either from his conviction or his death sentence. In fact, Kerr alleged no unconstitutional
restraint whatsoever that could be said to be a product of his capital conviction, never mind
restraint that would rise to the level of “confinement.” The same could be said about Ex
parte Baker.


 There we held that claims challenging the adequacy of counsel in Chapter 64
hearings for post-conviction DNA testing are not cognizable under Article 11.07 because
such proceedings do not result in additional or independent “confinement” beyond that
which flows from the initial conviction, which was not challenged. As in Kerr, the 
purported habeas corpus application identified no “restraint” of any degree, much less
confinement, that resulted on account of Baker’s Chapter 64 attorney’s alleged
ineffectiveness and therefore stated no cognizable claim. By contrast, as I have already
shown, each of the instant applicants has alleged a definite restraint upon his liberty interest
in avoiding a cruel and unusual punishment. We cannot deny them some habeas corpus
forum without effectively suspending the writ.
           The plurality also seems to rely, by analogy, upon the opinion of the Supreme Court
in Hill v. McDonough


 for the proposition that claims that do not implicate the “fact or the
length” of confinement are not cognizable in habeas corpus.


 Even the plurality concedes,
however, that Hill was not concerned with whether claims challenging the method of
execution are cognizable in a federal habeas corpus petition.


 The question in Hill was
whether a challenge to the method of execution goes to the “core” concerns of federal habeas
corpus—“the lawfulness of confinement or . . . particulars affecting duration”—such that it
must be raised, if at all, in habeas corpus proceedings and may not be brought in a civil-rights
lawsuit under 42 U.S.C. § 1983.


 This distinction between “core” claims that go to the “fact
or duration of the confinement” and mere “conditions” or circumstances of confinement had
its genesis in Preiser v. Rodriguez.


 The ratio decidendi of that opinion was comity. An
inmate should not be allowed to bypass the state-court exhaustion requirement inherent in
federal habeas corpus proceedings by raising challenges to the fact or duration of his
confinement in a civil-rights lawsuit. Such claims, the Supreme Court held, although they
fall within the ambit of the broad language of Section 1983, must nevertheless be brought
under the more specific provisions of the federal habeas corpus statute, 28 U.S.C. § 2254. 
Otherwise, an inmate could forego bringing his challenge in state court altogether by
couching it in terms of a federal Section 1983 civil-rights lawsuit and moving straight into
federal court, thereby defeating the manifest intent of Congress.
           But this does not amount to a holding that challenges to the conditions or
circumstances of confinement are not cognizable in a federal habeas corpus proceeding. To
the contrary, the Supreme Court observed in Preiser v. Rodriguez:
This is not to say that habeas corpus may not also be available to
challenge such prison conditions. When a prisoner is put under additional and
unconstitutional restraints during his lawful custody, it is arguable that habeas
corpus will lie to remove the restraints making the custody illegal.



 
Thus, Supreme Court recognized that unlawful restraint can occur even in the context of
otherwise lawful custody, and such restraint may be subject to an equitable remedy via
habeas corpus. The fact that Hill’s particular challenge to the method of his execution did
not go to the “core” concerns of habeas corpus only meant that he could proceed with his
civil-rights lawsuit under Section 1983. It did not mean that such a challenge was not also
cognizable in a federal habeas corpus proceeding.
           At the state level, there is no reason to defer to the interests of comity, federalism, or
exhaustion of state remedies in deciding what should be cognizable under the Great Writ. 
There is no particular need, as there was in Preiser v. Rodriguez, to distinguish habeas corpus
claims that challenge the fact or duration of confinement from those that challenge only
conditions or circumstances of confinement in order to protect the right of the states to be the
first to litigate the constitutionality of restraint of liberty. If a condition or circumstance of
an inmate’s confinement amounts to an incremental restraint upon his residual liberty interest
that is unconstitutional, then, as I have already suggested, it would amount to a suspension
of the writ to provide the inmate no habeas corpus forum to ventilate his claim. The plurality
errs in relying upon Hill to hold otherwise.
           The plurality also reasons that Article 11.071 is not available to remedy some potential 
future constitutional violation.


 “Habeas corpus serves to remedy existing constitutional
violations; it is not for claims that a statute may potentially be applied in a way that may
possibly be determined to be unconstitutional in the future.”


 Apparently there has been no
constitutional violation in the applicant’s case because he has not yet been executed; the
likelihood that he might actually be executed by lethal injection remains wholly speculative,
the judgment of the trial court and this Court’s mandate on appeal notwithstanding. Each of
these applicants will be heartened to learn, I suppose, that as soon as the lethal drugs do
begin to flow through his veins, his claim that the drugs will cause him such reasonably
avoidable pain as to violate the Eighth Amendment and Article I, § 13 of the Texas
Constitution will become cognizable. Although I imagine he will be somewhat disappointed
to learn that we have declared his claim to be mooted by his untimely death.
           Article 11.071 presently provides the exclusive procedure for the exercise of this
Court’s original habeas corpus jurisdiction when “the applicant seeks relief from a judgment
imposing a penalty of death.”


 The Legislature is empowered by Article V, § 5(c) of the
Texas Constitution to regulate the procedure by which we entertain post-conviction
applications for writ of habeas corpus.


 But in neither Article 11.071 nor Article 11.07 does
the Legislature presently require a showing of restraint rising to the level of “confinement”
before this Court may exercise its habeas corpus jurisdiction. Even if the Legislature did,
such a substantive limitation on our original habeas corpus jurisdiction would likely
constitute a suspension of the writ in violation of Article I, § 12. The Legislature is free to
regulate the how, when, and where of our original post-conviction habeas jurisdiction. But
I do not think that, even under Article V, § 5(c), the Legislature would ever be free to
circumscribe what is cognizable in the Great Writ without violating Article I, § 12.
           An inmate who alleges that the proposed method of his execution would be cruel and
unusual has stated a claim of unconstitutional “restraint” that emanates directly from “a
judgment imposing a penalty of death.”


 His claim falls comfortably within the ambit of the
statute. It makes no sense for the Court, especially at the present time, to impose a “fact or
length of confinement” limitation upon the applicant’s cruel and unusual punishment claim.
DUE PROCESS AND DUE COURSE OF LAW
           No fair-minded citizen approves of the execution of an innocent man. As judges, we
are only a little less appalled at the prospect of executing a man without due process of law. 
We should be equally hesitant to execute a man in a manner that would violate his Eighth
Amendment guarantee against cruel and unusual punishment. We are expected to insist upon
all ordinary process to protect against such an unpalatable result.
           As the Court acknowledges,


 the applicant has alleged, inter alia, that the first,
anesthetic drug is not adequately administered under our lethal-injection protocol. He has
thus stated a claim that, if true, would seem to entitle him to relief under Baze.


 Moreover,
because a challenge to the particular method of execution was not yet ripe at the time these
applicants filed their initial applications for writ of habeas corpus, those claims were
factually unavailable at that time and may be brought in a subsequent writ application.


 
When a claim in a subsequent writ application states facts which, if true, would entitle the
applicant to relief, and also includes a pleading of facts sufficient to establish that the
subsequent writ application is not abusive, Article 11.071 contemplates that it be returned
to the convicting court where the writ issues as a matter of law, and the convicting court can
proceed with whatever factual development it deems appropriate, at its discretion.



           Now that the Supreme Court has provided the applicable standard, we should allow
the litigation to proceed in accordance with the statutory scheme. It should be easy enough
to litigate whether the Texas protocol for lethal injection, as actually implemented by the
Director of the Texas Department of Criminal Justice, Correctional Institutions Division,
passes Eighth Amendment muster. There can be only two outcomes to such litigation, if it
is allowed to proceed on the merits. Either (after adequate discovery and factual
development below) our protocol (as implemented) will be deemed substantially similar to
Kentucky’s, and hence, constitutional, or it will be found lacking in some respect (probably
involving the procedures for assuring that the first drug is adequately administered). If we
find substantial similarity, that will end the litigation—in this and, presumably, every other
capital writ that raises the issue, so long as the protocol is maintained and followed. If not,
then the Director should know how to modify the protocol to achieve a constitutionally
acceptable method of lethal injection, and the matter will be put to rest soon enough. It is
only a matter of time. Still, the plurality denies the applicant a state forum to develop the
issue, though his pleading is sufficient.


 I am at a loss to understand why.
           Apparently the Court will not tolerate actual litigation of the issue if that means the
death machine meanwhile must stand idle. But we cannot fix the machine while the cogs are
turning. I would maintain the stays of execution in these causes and return them to their
respective district courts for ordinary factual development. Because the Court does not, I am
compelled to dissent.



 
Filed: June 9, 2008
Publish